UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRIAN-RICHARD VANWYCKHOUSE,

                                **Plaintiff,**

  vs.
                                                             5:23-CV-101

TESSY PLASTICS,                                            (MAD/ATB)

                                **Defendant.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

**BRIAN-RICHARD VANWYCKHOUSE**
368 7th Street
Fulton, New York 13069
Plaintiff, *pro se*

**BARCLAY DAMON LLP -**              **ROBERT J. THORPE, ESQ.**
**SYRACUSE OFFICE**                    **ROSS M. GREENKY, ESQ.**
125 East Jefferson Street
Syracuse, New York 13202
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On January 25, 2023, Plaintiff Brian-Richard Vanwyckhouse ("Plaintiff") commenced this action against Defendant Tessy Plastics ("Defendant") asserting employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., and common law negligence. *See* Dkt. No. 1. On March 21, 2023, following permission from the Court, Defendant filed the instant motion pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking dismissal of Plaintiff's complaint. *See* Dkt. No. 20. Plaintiff opposes the motion and Defendant has filed a reply. *See* Dkt. Nos. 23-24. For the reasons stated below, Defendant's motion is granted.

## II. BACKGROUND

According to the complaint, on or around August 9, 2021, Defendant's "HR Director emailed the new guidance to follow on masks/vaccinations. It stated, 'If unvaccinated you must wear your mask or will face disciplinary action up to and including termination.'" Dkt. No. 1 at ¶ 11. On or about that same day, "Plaintiff was called into HR where the HR representative and the Production Manager were seated." *Id.* at ¶ 12. Plaintiff communicated that Defendant does not "have the right to make anyone where [sic] the masks" and that "Plaintiff has God given rights to refuse." *Id*. Moreover, Plaintiff "questioned the validity of the data that [] Defendant was relying on by the CDC and any other health agency that was involved in the Covid-19 pandemic." *Id.* Plaintiff asked "What happens if the information [] Defendant is giving out is wrong?" *Id.* Plaintiff further "stated that Defendant has an obligation to keep the Plaintiff and all the employees safe." *Id.*

The meeting ended after "Plaintiff was asked to leave by the HR representative and walked out by the Production Manager." Dkt. No. 1 at ¶ 12. Defendant issued Plaintiff "a 3-day suspension . . . for failure to follow the CDC guidelines and [] Defendant['s] policy on mask wearing." *Id.* The HR representative told Plaintiff "3 different times" that he "was not being fired." *Id.* However, on or around August 11, 2021, Defendant informed Plaintiff by phone that "Defendant was not taking Plaintiff back." *Id.* at ¶ 13. Plaintiff received no stated reason as to why. *See id.* Days later, on August 16, 2021, "Plaintiff received Separation Notice from Defendant with no mention of why Plaintiff was terminated." *Id.* at ¶ 14. On or about that same day, "Plaintiff received life insurance information on Plaintiff['s] policy through [] Defendant with 'Resignation'" cited as the basis for his termination. *Id.* at ¶ 15.

On or around November 16, 2021, Plaintiff received a denial letter regarding an application for unemployment benefits. *See* Dkt. No. 1 at ¶ 16. The denial letter stated "Plaintiff failed to follow Defendant['s] Policy as well as the CDC's guideline on mask wearing. Plaintiff should have known [his] refusal would jeopardize Plaintiff['s] job." *Id.* Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on or around April 21, 2022. *See id.* at ¶ 19. Plaintiff received his Right to Sue Letter on or around December 6, 2022. *See id.* at ¶ 22. "Plaintiff seeks compensatory damages within the jurisdictional limits of this court" and "a jury of [his] peers." *Id.* at ¶ 33.

### III.  DISCUSSION

A.  **Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled

3

to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of the 'entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [] complaint must be dismissed[,]" *id.* at 570.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).  The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  Thus, a "document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**B.      Title VII Discrimination**

4

Under Title VII, "[i]t is unlawful for an employer . . . to fail or refuse to hire or to discharge any individual . . . because of such individual's . . . religion[.]" *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771-72 (2015) (quoting 42 U.S.C. §§ 2000e-2(a), 2000e(j)). "The term 'religion' includes all aspects of religious observance and practice, as well as belief," and employers must "reasonably accommodate . . . an employee's religious observance or practice" absent an "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j); *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) ("according to this definition, when an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship").

A Title VII plaintiff alleging employment discrimination must make a showing "(1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation[.]" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). Title VII employment claims are "subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*." *Id.* at 312; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). However, at initial pleading stage, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311.

Defendant argues that "the Complaint fails to identify Plaintiff's religion or any sincerely held religious belief, which is fatal to Plaintiff's claim." Dkt. No. 20-1 at 8 (citations omitted). Defendant further asserts that "the Complaint alleges a non-religious reason for Plaintiff's

5

opposition to the mask requirement, i.e., the validity of CDC data, which is equally fatal to Plaintiff's claim." *Id.* at 9 (citation omitted). Defendant states that "it is well-settled law that 'political, sociological, or philosophical' beliefs cannot form the basis for a Title VII religious discrimination claim." *Id.* (citation omitted). Furthermore, Defendant asserts that "Plaintiff's Title VII claim also fails because the Complaint does not allege that [Defendant] had knowledge of Plaintiff's religion or any related sincerely held religious beliefs." *Id.* (citations omitted). Finally, Defendant contends that "the only allegation in the Complaint even alluding to a purported religious belief – i.e., that 'Plaintiff has God given rights to refuse' to comply with the mask mandate – has been found to be insufficient as a matter of law to survive a motion to dismiss." *Id.* at 10 (collecting cases).

Plaintiff responds, in relevant part, that Title VII's definition of "religion" includes "all aspects of religious observance and practice as well as belief," including "religious beliefs that are new, uncommon, not part of a formal church or sect, only subscribed to by a small number of people, or that seem illogical or unreasonable to others." Dkt. No. 23 at 9. Likewise, Plaintiff asserts that "[a] belief is 'religious' for Title VII purposes if it is 'religious' in the person's 'own scheme of things,' i.e., it is a 'sincere and meaningful' belief[.]" *Id.* Plaintiff argues that "[r]eligious beliefs include theistic beliefs as well as non-theistic 'moral or ethical beliefs as to that [sic] what is right and wrong which are sincerely held with the strength of traditional religious views.'" *Id.* at 10.

Herein, the Court finds that the complaint fails to plausibly allege that Plaintiff's employer discriminated against him on the basis of religion. After thoroughly reviewing the complaint's allegations, and Plaintiff's opposition to the instant motion, it is obvious that the controversy at-hand stems from Plaintiff's objections to the *validity* of CDC guidelines and government

directives regarding COVID-19—not any *sincere religious beliefs*. By way of example, Plaintiff adduces numerous authorities concerning "[t]he principle that individuals should not be coerced to receive an unlicensed medical product[.]" Dkt. No. 23 at 7-8 (citing 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(I-III); *Doe #1 v. Rumsfeld*, 297 F. Supp. 2d 119 (D.D.C. 2003); 21 C.F.R. §§ 50.23, 50.24; 21; *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 184 (2d Cir. 2009)). And as argued by Defendant, Plaintiff's authorities demonstrate that he is improperly attempting to expand the definition of religion to include political, sociological, or philosophical beliefs. *See* Dkt. No. 20-1 at 8 (citations omitted).

While Plaintiff's opposition arguments severely undermine his discrimination claim, even when overlooking same, the complaint fails to allege that either vaccination or mask-wearing is offensive to Plaintiff's religion. Instead, as referenced above, the allegations concern Plaintiff's belief that Defendant (in reliance on governmental guidelines and/or directives) cannot lawfully compel an unvaccinated employee to wear a mask at work. *See* Dkt. No. 1 at ¶¶ 11-12, 16-18. Such circumstances do not give rise to an inference of discrimination claim based on religion.[1]

---

[1] The Court notes further that, in his complaint and opposition papers, Plaintiff repeatedly references a state court decision and order issued on January 24, 2022, *Demetriou v. New York State Dep't of Health*, 74 Misc. 3d 792 (Nassau Cnty. 2022), to support his claim that "the mask mandate" is unlawful. *See* Dkt. No. 1 at ¶ 17; Dkt. No. 23 at 6-7. Plaintiff also alleges that he sent a copy of the decision to Defendant months after his termination. *See* Dkt. No. 1 at ¶ 18. The Court has reviewed the decision in *Demetriou*, which concerned challenges to an executive order requiring "all state residents to wear a face-covering (mask) if above the age of 2 and able to medically tolerate same while in a public place and not able to maintain social distancing." 74 Misc. 3d at 794 (citing 10 N.Y.C.R.R. § 2.60). Even assuming the complaint plausibly alleged a Title VII discrimination claim as to Plaintiff's termination, the circumstances of the *Demetriou* decision—issued approximately five months after Plaintiff's termination—further indicates that Defendant had a legitimate, non-discriminatory basis for ending Plaintiff's employment, *i.e.*, compliance with a state-imposed mandate that was perceivably lawful at the time.

Plaintiff also fails to allege that Defendant was aware of any purported religious beliefs. Even when reading the complaint in a light most favorable to Plaintiff, the only allegation touching upon religion is that, during a meeting with Defendant's human resources representatives, Plaintiff stated that he has "God given rights to refuse" the CDC's (and thus Defendant's) mask policy. Dkt. No. 1 at ¶ 12; *see Claiborne v. Winthrop Univ. Hosp.*, No. 17-CV-6692 (JFB/GRB), 2019 WL 2439430, *3 (E.D.N.Y. Feb. 13, 2019) (dismissing *pro se* plaintiff's Title VII religion claim and noting that "[t]he only allegation regarding religious belief that can be gleaned from the complaint is that plaintiff chose to use the word 'God' on several occasions"), *report-recommendation adopted by* 2019 WL 1349528 (E.D.N.Y. Mar. 25, 2019).

Finally, even assuming the complaint alleged that Defendant was aware of a sincere religious belief, there are no plausible allegations that Plaintiff suffered workplace harassment or disparate treatment relative to other employees on the basis of a religious belief. *Cf. Kinowski v. The Home for Elderly Women of Montgomery County, Inc.*, No. 22-CV-1342 (BKS/DJS), 2023 WL 4865531, *7-9 (N.D.N.Y. July 31, 2023). Similarly, there are no allegations that Defendant unlawfully refused to accommodate same under the circumstances at the time. If anything, the complaint alleges that Defendant offered some measure of general accommodation insofar as permitting employees to wear masks in lieu of vaccination. *See* Dkt. No. 1 at ¶ 11.

As such, Plaintiff's Title VII claim for religious discrimination must be dismissed.

**C.   Negligence**

In New York, common law negligence contains the familiar elements of duty, breach, harm, and causation. *See Paulus v. Holimont, Inc.*, 100 F. Supp. 3d 292, 297 (W.D.N.Y. 2015) (citations omitted). However, in the employment context, the New York Workers' Compensation Law provides an exclusive remedy against an employer for injuries caused by negligence, "as

8

long as the employer maintained a[] Worker's Compensation insurance policy." *Gabel v. Richards Spears Kibbe & Orbe, LLP*, 615 F. Supp. 2d 241, 245 (S.D.N.Y. 2009) (citing N.Y. Workers' Compensation Law § 50). Importantly, in pursuing such an action, the plaintiff has the "burden to prove that her employer did not maintain such insurance[.]" *Id.* (citation omitted).

Defendant argues that Plaintiff's negligence claim is preempted by the New York Workers' Compensation Law. *See* Dkt. No. 20-1 at 11. Notwithstanding, Defendant asserts that "the Complaint conclusorily alleges that [Defendant's] 'actions constitute negligence'" and that there are "no allegations describing a duty owed to Plaintiff, let alone a breach of said duty[.]" *Id.* at 12. In any event, Defendant requests that the Court "decline to exercise supplemental jurisdiction because the Complaint fails to state a claim under federal law[.]" *Id.* (citations omitted).

Plaintiff asserts that Defendant owed him a "Duty of Care," which "was breached by denying [] Plaintiff" an opportunity to "present evidence directly related to the concerns that [] Plaintiff had with the mask mandates[.]" Dkt. No. 17 at 3. Plaintiff asserts that he "was injured because of the breach by termination of employment, loss of income, [and] denial of unemployment benefits[.]" *Id.*

Herein, the Court finds that Plaintiff's negligence claim is preempted by the New York Workers' Compensation Law. Plaintiff has made no discernable argument specifically addressing preemption, despite his obligation to plead the absence of an insurance policy.[2] In any event, Plaintiff's claim fails on the merits as the Court is unaware of any cognizable negligence theory (or any other tort claim) relative to the factual allegations in the complaint. *See Murphy v. Am.*

---

[2] Plaintiff refers to his previous pre-motion response to support his negligence claim. *See* Dkt. No. 23 at 10. However, that response is completely silent as to Defendant's preemption argument. *See generally* Dkt. No. 17.

9

*Home Prods. Corp.*, 58 N.Y.2d 293, 305 (1983) ("[A]bsent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired"). Plaintiff simply alleges that Defendant breached a purported duty permitting him "to be heard through due process," thus resulting in his termination and "economical and emotional damage." Dkt. No. 1 at ¶ 26. However, "New York common law does not recognize a cause of action for the wrongful discharge of an at-will employee." *Sullivan v. Harnisch*, 19 N.Y. 3d 259, 261 (2012) (citing *Murphy*, 58 N.Y.2d 293).

Accordingly, Plaintiff's state law negligence claim must be dismissed on the merits.

**D.     Opportunity to Amend**

"[M]otions to amend should be granted freely in the interests of justice, [and] a *pro se* complaint generally should no be dismissed without granting the plaintiff leave to amend at least once." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999); *see also Romano v. Lisson*, 711 Fed. Appx. 17, 19 (2d Cir. 2017). After carefully considering the matter, the Court has determined that Plaintiff cannot cure the defects with his claims. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (concluding that an opportunity to amend is not require where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it"). Specifically, in light of the reasons and authorities discussed throughout this Memorandum-Decision and Order, it is obvious that Plaintiff is trying to couch concerns as to the efficacy of vaccines and mask mandates into a sincerely-held religious belief for the purpose of maintaining a federal lawsuit challenging his at-will employment discharge. And as discussed previously, no such action is cognizable.

Accordingly, the complaint must be dismissed with prejudice.

## IV.  CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 20) is **GRANTED**; and the Court further

**ORDERS** that the complaint (Dkt. No. 1) is **DISMISSED** with prejudice and that judgment be entered in favor of Defendant; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  August 24, 2023
         Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge